BC

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS**

FILED
4/29/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EE

GRACIELA DELA TORRE )
Plaintiff ) Case Number 1:25-cv-13176
)
v. . ) Judge: Hon. Georgia N. Alexakis
) Mag Judge: M David Weisman
DABDOUB at al )
Defendant )

## THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOTICE OF DISABILITY AND LIMITED ASSISTANCE

Plaintiff Graciela Dela Torre ("Plaintiff") has disabilities documented under seal. See 1:22-cv-07059, Dkt. 72; 1:25-cv-01483, Dkt. 166. She received assistance in preparing this document, its contents were read aloud to her, and she approves and adopts it as her own. Her sealed medical records are also noticed at Dkt. 45.

### I. JURISDICTION AND VENUE

1. Under 28 U.S.C. § 1332(a)(1), this Court has diversity jurisdiction. Plaintiff resides in Illinois; Defendants, in Florida. The amount in controversy, exclusive of interest and costs, exceeds $75,000.
2. Venue is proper under § 1391(b)(2) because a substantial part of the events arose in this District.

### II. PARTIES

3. Graciela Dela Torre ("Plaintiff") resides in Kane County. Defendant Dabdoub Law Firm, P.A. is a Florida professional association. Defendant Edward Dabdoub ("Dabdoub"), its managing partner, is a Florida citizen. Defendant Kevin Probst ("Probst"), also a Florida citizen, served as attorney of record for Plaintiff's long-term disability claim. Dabdoub and Probst are sued individually and as agents of the Firm, which is vicariously liable under respondeat superior.

### III. FACTUAL ALLEGATIONS

#### A. The Attorney-Client Relationship

4. On April 8, 2022, Plaintiff retained Defendants. The Contingent Fee Agreement governed representation "in connection with disability benefits claimed on her long-term disability insurance policy." See Exhibit 12 (1:22-cv-07059, Dkt. 54).
5. The following documents are part of the Contingent Fee Agreement:
   **A.** Contingent Fee Agreement
   **B.** Direction of Payment
   **C.** Authorization to Release Information to Dabdoub Law Firm (From the LTD Insurer)
   **D.** Authorization to Release Information from Nippon Express Inc. (From The employer)
   **E.** SSA-3288 (Social Security Administration)
   **F.** Authorization for Use and Disclosure of Protected Health Information (HIPAA Rule 164.508)
6. Plaintiff thereby granted Defendants full access to her medical records and Social Security information.
7. By operation of Illinois Rules of Professional Conduct 1.1 and 1.3, Defendants owed Plaintiff the duty of competent and diligent representation in her ERISA Long Term disability claim, That duty included identifying and invoking all available benefits under the LTD Policy.

#### B. The Underlying LTD Claim: The Matter Covered by the Contingent Fee Agreement

8. Dkt 9-3 of case 1:22-cv-07059 reveals that, June 30, 2019, the LTD Insurer's approved Plaintiff's long-term disability claim through April 8, 2043.
9. Dkt 9-3 of case 1:22-cv-07059 reveals that Plaintiff's monthly LTD benefit was $3,207.59 and 0% was applied under Cost Of Living Adjustment ("COLA")
10. Dkt 9-2 of case 1:22-cv-07059 is the LTD policy, defines A)"Dependent" to include the insured's spouse and children. B). The Policy requires annual Cost-of-Living Adjustments ("COLA") based on the Consumer Price Index, with a maximum annual increase of 10%, effective each anniversary of the disability.

11. Dkt 9-4 of 1:22-cv-07059 reveals that On October 27, 2021, Nippon's claims administrator noted: "She listed 2 dependent children." (Dkt. 9-4 at 2). The policy also requires annual cost-of-living adjustments based on the Consumer Price Index.
12. *On May 6, 2021, the SSA confirmed Plaintiff earned enough credits to qualify for disability benefits. See Exhibit C.*
13. Dkt 9-7 at 14 of case 1:22-cv-07059 reveals that the LTD Insuror's own independent medical reviewer opined that Plaintiff "would be unable to work for approximately 3 months" following her elbow surgery on February 28, 2022.

**C. Defendants Had Actual Knowledge of Plaintiff's Economic Duress**

14. Dkt. 9-5 of 1:22-cv-07059 Reveals that the LTD Insurer terminated Plaintiff's long-term disability benefits on November 18, 2021.
15. From November 18, 2021 date through at least January 2024, Plaintiff had no LTD benefits.
16. On January 16, 2025, Plaintiff emailed Probst seeking to vacate the settlement based on newly discovered evidence.
17. On January 17, 2025, Probst responded: "We will not be providing you with any further advice or representation " Exhibit M: Page 1.

**D. Defendants Had Authorization to Verify SSDI Status But Never Did**

18. On April 8, 2022, Plaintiff executed an SSA-3288 authorization (Ex. 12, p. 7), expressly permitting Defendants to obtain her Social Security records, including benefit status and amounts.
19. Defendants did not invoke this authorization. They never verified Plaintiff's SSDI status. Had they done so, they would have discovered that the SSA had closed Plaintiff's claim on August 9, 2022, and that she had received $0 in SSDI benefits. Ex. D.

**E. Defendants' Statement Regarding SSDI Offset Made Without Prior Verification**

20. On January 7, 2025, Probst wrote to Plaintiff:
"*As you may recall, there was a strong possibility that even if we had taken your case to judgment and won, you would have walked away with $0 because of the potential offsets/overpayment resulting from the money you were expecting to receive from Workers Comp and/or Social Security.*" (**Exhibit M Page 3**).
21. Defendants successfully made plaintiff sign a settlement and this statement also without first verifying Plaintiff's SSDI status, despite having a signed SSA-3288 authorization (Dkt 54 page 12 of 1:22-cv-07059). In fact, the Social Security Administration had closed Plaintiff's claim on August 9, 2022, and Plaintiff had received $0 in SSDI benefits. See Exhibit D.
22. Defendants used this unsubstantiated threat during settlement negotiations in December 2023 to pressure Plaintiff into accepting a settlement of $90,000.
23. Plaintiff relied on Defendants' representation that she could "walk away with $0 even if she won her case." As a direct result, Plaintiff accepted a settlement that was less than 3.5% of the value of her LTD benefits alone.

**F. Defendants' Failure to Disclose Policy Benefits and Approval Date Before Settlement**

24. Dkt. 9-4 at 2 of case 1:22-cv-07059 shows that under the LTD Policy, "Dependent" expressly includes a spouse and children. Despite internal documentation acknowledging that Plaintiff listed two dependent children, and Dkt. 9-2 of the same case reflecting Nippon's internal review of that fact, Defendants did not invoke the availability of dependent benefits for Plaintiff's two dependents.
25. Additionally, the insurer and Defendants were present at the deposition and repeatedly acknowledged surveillance had captured Plaintiff in the company of a male believed to be her husband. Nevertheless, Defendants did not invoke or address the availability of dependent benefits for Plaintiff's spouse.
26. Defendants further did not invoke the LTD Policy's provision mandating annual Cost-of-Living Adjustments (COLA) tied to the Consumer Price Index (CPI), as reflected in Dkt. 9-2 of the same

case. The CPI measures inflation, meaning Plaintiff's monthly benefit would have increased annually for 22 years. Defendants never disclosed this to Plaintiff.

27. Finally, Defendants omitted that Plaintiff's benefits were approved effective April 8, 2043. *See* 1:22-cv-07059, Dkt. 9-3.
28. Plaintiff did not discover any of the foregoing omissions until September 2025. Prior to that date, Defendants never disclosed the existence of dependent benefits, the COLA provision, or the April 8, 2043 approval date, either before or during settlement negotiations.
29. Plaintiff first became aware of these material facts September 2025 by independently navigating the PACER system, without prior access to the full record. Upon discovery, Plaintiff acted promptly to assert the rights herein and served Defendants with a pre-suit demand letter.

## G. Defendants Failed to Raise ERISA Violations

30. Defendants did not invoke Nippon's shifting rationale for denial. Nippon's termination letter (Dkt. 9-5 1:22-cv-07059) stated that Plaintiff failed to provide proof of disability. Nippon's appeal denial (Dkt. 9-7 1:22-cv-07059) subsequently shifted to a new, unstated rationale.[1]
31. The Seventh Circuit prohibits plan administrators from introducing new reasons for denial that were not presented during the administrative proceedings.[2]

Footnotes:

[1] *See* 29 C.F.R. § 2560.503-1(h)(3)(ii) (requiring that an adverse benefit determination include the specific reason or reasons for denial); *id.* § 2560.503-1(h)(4)(ii) (providing that a claimant must be given a full and fair review, including the opportunity to respond to new evidence or rationales before a final adverse determination).

[2] *Halpin v. W.W. Grainger, Inc.*, 962 F.3d 765, 774 (7th Cir. 2020) ("A plan administrator may not rely on a new rationale for denial that was not articulated during the administrative claims process."); *see also Wolfe v. Barnhart*, 446 F.3d 724, 729 (7th Cir. 2006); *Juras v. Intel Corp. Long-Term Disability Plan*, 657 F. App'x 614, 617 (7th Cir. 2016).

32. Defendants further did not raise Nippon's post-termination reliance on surveillance videos. Performance of routine household chores does not, as a matter of law, establish capacity for full-time employment. *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003).
33. Finally, Defendants did not invoke ERISA's procedural requirements mandating a full and fair review, including timely notice of any additional information necessary to perfect a claim and an explanation of the appeal process. 29 C.F.R. § 2560.503-1(h)(3)(ii), (h)(3)(iv).

## H. Defendants' Deviation from DocuSign Practice for the Settlement Agreement

34. Defendants routinely used DocuSign for documents requiring Plaintiff's signature, including:
    a. Contingent Fee Agreement (April 8, 2022)
    b. Additional HIPAA Authorizations (April 17, 20, 27, 2023)
    c. Disbursement Statement (January 23-25, 2024)
    d. Copy of Settlement Statement
35. On December 19 and 21, 2023, Probst instructed Plaintiff: "Please review the attached settlement agreement & release. You only need to send back page 7." Exhibits F, G.
36. On December 29, 2023, Plaintiff requested to use DocuSign for the settlement agreement. Probst refused: "It's fine to sign it and use the 'scan documents' option." *See* Exhibit H.
37. Defendants abandoned DocuSign for the settlement agreement while using it for all other documents.

### I. Economic Duress: In Preparation of Settlement Funds Pending Signature on Co-Counsel Agreement

38. On May 12, 2023, Defendant Probst stated that Ankin Law was "not doing any actual work" and was "just there in case something has to be filed." *See* Exhibit I.
39. The original Contingent Fee Agreement contains no mention of Ankin Law. Plaintiff never consented in writing to any fee-splitting, as required by Ill. R. Prof'l Conduct 1.5(e).
40. Nevertheless, Defendants executed a Co-Counsel Agreement with Ankin Law providing that "25% of Dabdoub Law Firm's attorney's fees will be paid to Ankin Law Office, LLC." *See* Dkt. 92 of 1:22-cv-07059.

41. On December 29, 2023, Plaintiff signed the Settlement Agreement. *See* Exhibit H.
42. On January 23, 2024, after the case had been settled and dismissed, Defendants sent Plaintiff the Co-Counsel Agreement with the message: "*In preparation for settlement funds, we will need the attached signed.*" *See* Exhibit K.
43. Defendants withheld settlement funds pending Plaintiff's signature. Plaintiff had no other benefits and signed under economic duress.
44. Plaintiff signed the same day. On January 23, 2024, she had received no LTD benefits for 26 months and had no other funds. She signed under economic duress. See Richter v. Prairie Farms Dairy, Inc., 2016 IL App (5th) 150089, ¶ 35 (economic duress exists when one party is compelled to accept terms by threat of financial hardship)[1]

Footnote

[1] *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL App (5th) 150089, ¶ 35 ("[e]conomic duress exists when one party is compelled to accept the terms of another by threat of financial hardship"). Withholding settlement funds pending signature on an agreement not contained in the original contract constitutes economic duress when the signing party has no other source of funds. *See Williamson v. Ill-Eagle Enterprises, Ltd.*, 2015 WL 802250, at *3 (N.D. Ill. Feb. 24, 2015).

## J. Refusing to Communicate While Remaining Attorneys of Record

45. *On January 3, 2025, Plaintiff inquired whether Defendants would include her 'incapable of work' medical report in settlement negotiations. The report was provided on December 8, 2023, and acknowledged by Probst on December 11, 2023, before the settlement was negotiated.*
46. On January 7, 2025, Probst responded that Nippon "was not interested in documents from 2 years after their decision was made" and the case "cannot be reopened." He did not answer the question. By ignoring the "incapable of work" report, Probst ignored Plaintiff's continuing disability as governed by ERISA and the LTD Policy. *See* Exhibit M.
47. On January 16, 2025, Plaintiff requested assistance filing a Rule 60(b) motion based on newly discovered evidence, even taking responsibility for the omission; as a desperate move, Defendants had full access to Plaintiff's medical records but had never used them. *See* Exhibit M: Page 2
48. On January 17, 2025, Probst responded: "We will not be providing you with any further advice or representation." *See* Exhibit M: Page Page 1.
49. Defendants thereby ignored ERISA's full and fair review requirements under 29 C.F.R. § 2560.503-1, which mandates that claimants receive timely notice of adverse benefit determinations, a specific explanation of the reasons for denial, and a full and fair opportunity to appeal.
50. On January 28, 2025, Plaintiff had no choice but to accept their refusal to represent her and did her best to proceed unrepresented. Thereafter, Plaintiff requested that Probst withdraw to protect her privacy, as Defendants were receiving all copies of Plaintiff's filings while they remained attorneys of record.
51. On January 30, 2025, Defendants filed a Motion to Withdraw. *See* Dkt. 44 of case 1:22-cv-07059.
52. On February 6, 2025, Dkt. 61-1 at ¶ 14, Case 1:22-cv-07059, reveals that the LTD insurer's counsel declared: "Mr. Probst made it very clear that in his view, his representation of Ms. Dela Torre had ended and that he will not communicate with the Plaintiff unless ordered by the Court."
53. By disregarding Plaintiff's "incapable of work" medical report without determining whether it satisfied the LTD Policy's continuing disability requirements, Probst ignored evidence of continuing disability under ERISA and the Policy.

## K. Failure to Consider Medical Evidence of Continuing Disability Before Settlement

54. In addition to the valid HIPPA released in Defendants possession, On November 3, 2023, Plaintiff provided Defendants with medical records, including records also emailed on July 11, 2023 demonstrating that Plaintiff was still under continuing medical care less than two months before the settlement. *See* Exhibit L.1.
55. On December 8, 2023, Plaintiff provided Defendants with an "incapable of work" medical report. On December 11, 2023, Defendant Probst acknowledged receipt of the report. *See* Exhibit E.
56. Although Defendants had a HIPAA release and received direct evidence of continuing disability, the report does not appear to have been considered or incorporated into settlement negotiations, raising questions about the fairness of the process.
57. Eighteen days after the receipt of the “incapable of work” medical report, Plaintiff, in reliance on Defendants’ representations regarding potential SSA benefits, executed the settlement on

December 29, 2023. The LTD Insurer and Defendant Probst did not execute the agreement until January 2, 2024. See Exhibits L & L-1.

**58.** Plaintiff's medical records (filed under seal at 1:22-cv-07059, Dkt. 72) demonstrate that her disability is permanent, degenerative, and non-reversible. The records show four upper extremity surgeries between 2020 and 2023, a treating physician's statement that Plaintiff is "incapacitated from any and all work pending recovery," and confirmation that her diagnoses are "permanent and nonreversible disabilities."

**59.** On February 10, 2025, Plaintiff filed Dkt. 72. The Court granted the motion to seal at Dkt. 94, ordering pages 3 through 112 placed under seal. As counsel of record, Defendants received electronic notice of this filing.

**60.** Defendants never used this evidence to demand reinstatement of Plaintiff's LTD benefits or to calculate a fair buy-out based on the remaining 22 years of benefits, dependent benefits, and COLA adjustments.

### L. No Final Judgment on the Merits Has Been Entered Against Plaintiff

**61.** No final judgment on the merits has been entered against Plaintiff in any prior proceeding. *See* 1:22-cv-07059, Dkt. 35 (dismissal pursuant to settlement); 1:25-cv-01483, Dkt. 186 (stay "does NOT constitute a ruling on the merits").

**62.** Defendants were not parties to the prior litigation and are therefore not bound by it. Res judicata and collateral estoppel do not apply.[1]

**Footnote:**

[1] *Taylor v. Sturgell*, 553 U.S. 880, 892–94 (2008) (holding that nonparties are generally not precluded by prior litigation unless they fall within recognized exceptions).

### M. Statute of Limitations Tolled by Continuous Representation, Discovery Rule, and Legal Disability

**63.** Continuous legal representation tolled the statute of limitations until such representation ended on January 30, 2025.[1]

**64.** Plaintiff did not discover the April 8, 2043 benefit date until September 2025, triggering the discovery rule.[2]

**65.** Incapacity tolling also applies under Illinois law, as Plaintiff’s cognitive impairments prevented her from timely filing.[3]

Footnotes:

*[1] Belden v. CCS, Inc., 398 Ill. App. 3d 1024, 1032 (2010) (holding that continuous legal representation may toll the statute of limitations until the representation ends).*

*[2] Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Comm'n, 377 F.3d 682, 688 (7th Cir. 2004) (applying the discovery rule: limitations begin when the plaintiff knows or reasonably should know of the injury).*

*[3] 735 ILCS 5/13-211(b) provides: “If the person entitled to bring an action… is not under a legal disability at the time the cause of action accrues, but becomes under a legal disability before the period of limitations otherwise runs, the period of limitations is stayed until the disability is removed.” Plaintiff’s cognitive impairments are documented in Exhibit B and under seal at 1:22-cv-07059, Dkt. 72.*

## IV. CAUSES OF ACTION

## COUNT I: PROFESSIONAL NEGLIGENCE (LEGAL MALPRACTICE)

**66.** Plaintiff incorporates paragraphs 1 through 65.

**67.** Defendants owed Plaintiff a duty of competence and diligence under the Illinois Rules of Professional Conduct, including Rule 1.1 (competence) and Rule 1.3 (diligence). See Ill. R. Prof’l Conduct 1.1, 1.3.

**68.** Defendants breached this duty by:

**A.** Failing to raise that Plaintiff's spouse and children qualified for dependent benefits (Dkt. 9-2 & 9-4 of 1:22-cv-07059);

**B.** Failing to raise that the LTD policy required annual COLA adjustments (Dkt. 9-2 of 1:22-cv-07059);

**C.** Failing to raise that Plaintiff's benefits were approved until April 8, 2043 (Dkt. 9-3 of 1:22-cv-07059);

**D.** Failing to verify Plaintiff's SSDI status despite having signed SSA-3288 authorization Dkt. 54 of 1:22-cv-07059;

**E.** Defendants knowingly or recklessly represented that Plaintiff “would have walked away with $0 due to SSDI offset” in order to induce acceptance of the settlement. This conduct supports claims for fraud in the inducement, breach of fiduciary duty, and a violation of Illinois Rule of Professional Conduct 8.4(c). See Exhibit M at 3. (Exhibit M: Page 3).

**F.** Defendants unilaterally refused all communication with Plaintiff, forcing her to proceed pro se, while

remaining counsel of record without court permission to withdraw (Dkt. 61-1 ¶ 14 of case 1:22-cv-07059).[2] .

**G.** Defendants did not invoke Nippon's shifting rationale for denial. Nippon's termination letter (Dkt. 9-5 1:22-cv-07059) stated that Plaintiff failed to provide proof of disability. Nippon's appeal denial (Dkt. 9-7 1:22-cv-07059 ) subsequently shifted to a new, unstated rationale.[3] .

**H.** Defendants further failed to raise Nippon's post-termination reliance on surveillance videos. Nippon introduced video surveillance on appeal that was never mentioned in the initial termination letter. This is a classic shifting rationale prohibited by *Halpin*.[4]

**FOOTNOTES**

[1] Ill. R. Prof'l Conduct 8.4(c) provides: "It is professional misconduct for a lawyer to... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *See In re Pivacek*, 2023 IL 129263, ¶ 32 (suspension for attorney who made false statements to client regarding settlement).

[2] Ill. R. Prof'l Conduct 1.16(c) provides: "A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation." Ill. S. Ct. R. 13(c)(1) further provides: "An attorney may not withdraw as counsel in a pending cause without leave of court." The Court granted Defendants' Motion to Withdraw (Dkt. 44) on February 13, 2025. *See* Dkt. 94, 1:22-cv-07059. Prior to court approval, Defendants remained attorneys of record while refusing to communicate with Plaintiff. *See In re Marriage of Horwitz*, 2019 IL App (1st) 182305, ¶ 30.

[3] *Halpin v. W.W. Grainger, Inc.*, 962 F.3d 765, 774 (7th Cir. 2020) ("A plan administrator may not rely on a new rationale for denial that was not articulated during the administrative claims process."); *see also* 29 C.F.R. § 2560.503-1(f) (initial denial notice must contain "the specific reason or reasons for the denial" and "specific reference to pertinent plan provisions"); *id.* § 2560.503-1(h)(4)(ii) (claimant must be provided with new rationale sufficiently in advance to respond).

[4] *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) ("Routine household chores do not establish capacity for full-time employment."); *see also id.* at 918 ("Fibromyalgia's symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.").

**69.** As a direct and proximate result of these breaches, Plaintiff suffered damages in excess of $2.6 million.

## COUNT II: BREACH OF FIDUCIARY DUTY

**70.** Plaintiff incorporates paragraphs 1 through 69.

**71.** Defendants owed Plaintiff fiduciary duties. Ill. R. Prof'l Conduct 1.7.*

**72.** Plaintiff alleges that Defendants breached these duties by:

**A.** Creating an urgency to have plaintiff sign on Dec 29, 2023 while the rest on Jan 02, 2024

**B.**Instructing Plaintiff to return only page 7 of the settlement agreement (Exhibits F, G);

**C.** Refusing Plaintiff's request to use electronic for the settlement agreement (Exhibit H);

**D.** Routinely using DocuSign for all other documents, highlighting a deviation from established practice;

**E.** Withholding settlement funds pending signature on an unauthorized Co-Counsel Agreement (Exhibit K);

**F.** Representing a potential SSDI offset that was false or misleading. (Exhibit M Page 3);

**G.** Failing to disclose the true value of Plaintiff's claim.

**73.** Defendants were unjustly enriched by at least $31,563.93.

Footnote: *****Under Illinois law, an attorney-client relationship is a fiduciary relationship as a matter of law. In re Estate of Michalak, 404 Ill. App. 3d 75, 93 (1st Dist. 2010). Fiduciary duties include the duty of loyalty, the duty of candor, the duty to disclose material information, and the duty to avoid conflicts of interest. Id

## COUNT III: BREACH OF CONTRACT

**74.** Plaintiff incorporates paragraphs 1 through 73.

**75.** The Contingent Fee Agreement (Dkt. 54 of 1:22-cv-07059) is a valid contract. Section C provides 20% for a buy-out of an approved claim.

**76.** Plaintiff's claim was approved on June 30, 2019. The settlement was a buy-out. The phrase "in approved status with benefits being paid" is ambiguous and must be construed against the drafter. Kaiser v. MEPC Am. Props., Inc., 164 Ill. App. 3d 978, 983 (1987).

**77.** Defendants breached by charging 40% (36,000) instead of 20% (18,000) and by charging unnecessary costs as a local counsel on the record. Exhibit J.

**78.** Plaintiff was damaged in the amount of 18,000 and 4,563.93 unnecessary and unexplained costs.

## COUNT IV: FRAUD IN THE EXECUTION

**79.** Plaintiff incorporates paragraphs 1 through 78.

**80.** Fraud in the execution occurs when a party is misled as to the nature or essential terms of the document signed. Restatement (Second) of Contracts § 163 (1981) provides that if a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has a reasonable opportunity to know of the character or essential terms, that conduct is not effective as a manifestation of assent. Illinois courts have applied this principle in cases where a party was

deceived about the document signed. See *Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859, 867 (1st Dist. 1993) (reformation available when a party mistakenly signed a document different from what was intended).

**81.** Defendants used DocuSign for prior important documents but did not use it for the settlement agreement. Instead, they instructed Plaintiff to return only page 7 and declined to execute the agreement via electronic. Exhibits F, G, H.

**82.** In the alternative, Plaintiff asserts a claim for fraudulent inducement. Defendants were aware that Plaintiff experienced headaches and blurry vision, which impaired her ability to read and were consistent with her documented cognitive impairments. See Exhibit B.

**83.** Plaintiff relied on Defendants' representations and signed a document she never saw in its entirety.

**84.** As a direct and proximate result, Plaintiff lost over $2.6 million in benefits.

## COUNT V: CONVERSION

**85.** Plaintiff incorporates paragraphs 1 through 84.

**86.** Conversion is the unauthorized assumption of dominion over property. *Miller v. Sutker*, 2017 IL App (1st) 162168, ¶ 24.[1]

**87.** The settlement check belonged to Plaintiff. The Contingent Fee Agreement allows endorsement but does not authorize excessive fees or unnecessary costs.

**88.** In the alternative, the excessive fee and unnecessary costs constitute converted property.

**89.** Plaintiff demanded return. Defendants ignored.[2] *See* Dkt. 39 of 1:25-cv-13176, pages 2, 3 & 4 .

**90.** Plaintiff is damaged in the amount of $22,563.93, plus applicable interest under 815 ILCS 205/2.[3]

Footnotes:

[1] *Miller v. Sutker*, 2017 IL App (1st) 162168, ¶ 24 ("Conversion is the unauthorized assumption of dominion over property belonging to another."); *see also Wilson v. Burkart*, 2020 IL App (5th) 190350-U, ¶ 12 (attorney's withholding of judgment proceeds constitutes conversion when client has unconditional right to immediate possession).

[2] Under Illinois law, a demand for return and refusal is required to establish conversion unless the demand would be futile. *In re McLennon*, 93 Ill. 2d 215, 221 (1982) ("conversion of a client's funds, with or without a 'dishonest motive,' simply cannot be countenanced"). A lawyer's failure to segregate client funds from the lawyer's own business or personal funds constitutes commingling, which the Illinois Supreme Court has consistently condemned as a serious breach of professional and ethical duties. *In re Enstrom*, 104 Ill. 2d 410, 417 (1984).

[3] 815 ILCS 205/2 provides for prejudgment interest at 5% per annum on money withheld by an unreasonable and vexatious delay of payment. *See also* 735 ILCS 5/2-1303.1 (prejudgment interest must be awarded from the date written notice of the claim is given).

## V. DAMAGES

**91.** Plaintiff's compensatory damages are:

a. Lost benefits to April 8, 2043: $846,803.76
b. Lost dependent benefits (spouse and 2 children): $758,784.00
c. Lost COLA adjustments (22 years): $200,000.00
d. Lost SSDI benefits (including dependents): $1,078,704.00
Sub-total (a through d): $2,884,291.76
e. Unnecessary costs deducted: $4,563.93
f. Fee overcharge (20% vs. 40%): $18,000.00
g. Unauthorized fee-splitting: $9,000.00
Total compensatory damages: $2,915,855.69

**92.** Plaintiff also seeks punitive damages, prejudgment interest, and damages for emotional distress, to be determined at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

A. Compensatory damages of $2,915,855.69;
B. Punitive damages under Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 186 (1978);
C. Prejudgment interest at 5% per annum from December 29, 2023 (815 ILCS 205/2);
D. Conversion damages of $22,563.93;
E. Such other relief as the Court deems just.

**VII. JURY DEMAND:** Plaintiff demands a trial by jury on all counts.

**VIII. VERIFICATION:** I, Graciela Dela Torre, declare under penalty of perjury (28 U.S.C. § 1746) that the foregoing is true and correct to the best of my knowledge and belief. Rule 11 Certification: Plaintiff certifies

that the claims asserted have not been previously litigated in any state or federal court, except as expressly referenced herein.

Dated: April 29, 2026.

/s/ Graciela Dela Torre Pro Se
Elgin, IL 60123 (630) 670-5914
gmestiza1@gmail.com

## IX. EXHIBITS
## PURSUANT TO FEDERAL RULE OF EVIDENCE 201

Pursuant to Federal Rule of Evidence 201(b)(2), Plaintiff hereby requests that the Court take judicial notice of the following documents, which are matters of public record and/or are already within the custody of this Court or the docket of this or a related federal case:

Dkt. 9-2 1:22-cv-07059 LTD Policy. (Defines "Dependent" to include spouse and children; requires annual Cost-of-Living Adjustments (COLA) tied to the Consumer Price Index (CPI), which measures inflation in the U.S. economy)

Dkt. 9-3 1:22-cv-07059, Claim Coversheet (*Termination date of 4/8/2043*)

Dkt. 9-4 at 2 1:22-cv-07059, Internal Review *"She listed 2 dependent children"*

Dkt. 9-5 1:22-cv-07059, LTD Insuror's Termination Letter *"failed to provide proof of disability"*

Dkt. 9-7 1:22-cv-07059, Nippon Appeal Denial Letter (*"surveillance," "full-time work," "recurring disability not covered"*)

Dkt. 5 1:22-cv-07059, Local Counsel Appearance (*The one and only Dkt. ever filed by "co-counsel"*)

Dkt. 31 1:22-cv-07059, *Notice of Settlement*

Dkt. 37 1:22-cv-07059 *Motion to Reopen sealed by LTD Insurers petition.*

Dkt. 44 1:22-cv-07059, *Dabdoubt's (Defendants) Motion to Withdraw*

Dkt. 54 1:22-cv-07059, Contingent Fee Agreement *(including SSA-3288 authorization)*

Dkt. 61-1, ¶ 14, 1:22-cv-07059 Declaration LTD ins. Counsel (*"will not communicate unless ordered by Court"*)

Dkt. 92 Page 17 1:22-cv-07059, Defendants' Response (Co-Counsel Agreement) no date on it

Dkt. 186 1:25-cv-01483, Minute Entry (*"The court's order staying this case does not constitute a ruling on the merits of Ms. Dela Torre's challenges to the settlement she reached earlier with Nippon* (LTD Insurer)")

**1:22-cv-22990 Florida Docket S.D. Fla**. (Plaintiff's medical records are still filed unsealed)

**Exhibit A:** Co-Counsel email dated <u>01/23/2024</u> *(The settlement was signed on **<u>12/29/2023</u>**)*

**Exhibit B:** (6/30/2023) "I have tried to read the transcript several times and I have to stop because of my chronic headaches and blurred vision."

**Exhibit C:** SSA Statement (5/6/2021) ($1,590 with a maximum Family Survivor benefit of $2,975 per month)

**Exhibit D:** SSA Denial Letter (2/3/2025) "Claim closed 8/9/22; appeal untimely"

**Exhibit E:** 12/8/2023 email: Incapable form; Probst acknowledged

**Exhibit F:** 12/19/2023 email: *"You only need to send back page 7"*

**Exhibit G:** 12/21/2023 email: *"please sign and (only) return page 7"*

**Exhibit H**: 12/29/2023 email: Plaintiff requested Digitally (DocuSign); Probst refused

**Exhibit I**: 5/12/2023 email: *"They're not doing any actual work"* (Ankin Law)

**Exhibit I.1**: 5/12/2023 email: "(Ankin Law) *"I initially used their service but I was treated in a very racist way, so I'm no longer using their services"*. (quoted)

**Exhibit J:** Settlement Statement

**Exhibit K:** Co-counsel email (01/23/2024) *"In preparation for settlement funds, we will need the attached signed"* (quoted)

**Exhibit M: Page 4 & Page 3:** Jan 3 & 7, 2025 emails: Plaintiff requested help; Probst refused

**Exhibit M: Page 2:** 01/16/2025 email: Plaintiff requested Rule 60(b) assistance

**Exhibit M: Page Page 1** 01/17/2025 email *"we will not be providing you with any further advice or representation"*

Gmail

EXHIBIT A

**Gracie Dlt <gmestiza1@gmail.com>**

# Re: Dela Torre v Nippon - Co-counsel Agreement

1 message

**Gracie Dlt** <gmestiza1@gmail.com> Tue, Jan 23, 2024 at 3:29 PM
To: Geneses Strongarone <geneses@longtermdisability.net>
Cc: Kevin Probst <kprobst@longtermdisability.net>, Maria Calvo <maria@longtermdisability.net>

Thank you for the heads up I signed dated and returned the form.
Thank you and God bless us all.

On Tue, Jan 23, 2024, 12:15 PM Geneses Strongarone <geneses@longtermdisability.net> wrote:

> Dear Ms. Dela Torre,
>
> In preparation for settlement funds, we will need the attached signed and returned to our office. This is the Agreement previously discussed with you regarding Ankin Law as co-counsel in your case. If you have any questions, please do not hesitate to contact us.
>
> Thank you,
>
> **Geneses Strongarone**
>
> Litigation Paralegal
>
> *Office*
>
> 305.754.2000
>
> *Fax*
>
> 305.754.2007
>
> longtermdisability.net
>
> 1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

Gmail

# Exhibit B

Gracie Dlt <gmestiza1@gmail.com>

## **Graciela DelaTorre**Please refresh my memory

1 message

**Gracie Dlt** <gmestiza1@gmail.com> Thu, Jul 6, 2023 at 2:45 PM
To: Kevin Probst <kprobst@longtermdisability.net>
Cc: Geneses Strongarone <geneses@longtermdisability.net>

*Graciela*
***Direct # 630.670.5914***

***Do not print this email unless is necessary***

On Fri, Jun 30, 2023 at 2:03 PM Gracie Dlt <gmestiza1@gmail.com> wrote:

> Thank you so much I greatly appreciate that.
>
> On Fri, 30 Jun 2023, 7:56 am Kevin Probst, <kprobst@longtermdisability.net> wrote:
>
> > Hi, Gracie:
> >
> > It's perfectly fine to have a friend or family member read it to you while you listen for something that doesn't sound right. I'm also reading the transcript myself and will let you know if I find something that might need to be amended.
> >
> > Regards,
> > Kevin
> >
> > **Kevin E. Probst, J.D.**
> > **Disability Insurance & ERISA Attorney**
> >
> > **Dabdoub Law Firm**
> > **Toll Free:** 888.812.0393
> > LongTermDisability.net
> >
> > ---
> >
> > **From:** Gracie Dlt <gmestiza1@gmail.com>
> > **Sent:** Friday, June 30, 2023 6:49:04 AM
> > **To:** Geneses Strongarone <geneses@longtermdisability.net>
> > **Cc:** Kevin Probst <kprobst@longtermdisability.net>
> > **Subject:** Re: Please refresh my memory
> >
> > Hi Geneses,
> > I'm really sorry as I have tried to read the transcript several times and I have to stop because of my chronic headaches and blurred vision.
> >
> > Gracie made sure her attorney was aware of her cognitive decline.
> >
> > *Graciela*
> > ***Direct # 630.670.5914***
> >
> > ***Do not print this email unless is necessary***

Exhibit C

Graciela De La Torre | May 6, 2021

# Your Social Security Statement

Your *Social Security Statement* tells you about **how much you or your family would receive** in disability, survivor, or retirement benefits. It also includes our record of your lifetime earnings. Check out your earnings history, and **let us know right away if you find an error**. This is important because we base your benefits on our record of your lifetime earnings.

Social Security benefits are **not intended to be your only source of income when you retire**. On average, Social Security will replace about 40 percent of your annual pre-retirement earnings. You will need other savings, investments, pensions, or retirement accounts to make sure you have enough money to live comfortably when you retire.

Social Security Administration

## Your Estimated Benefits

| | | |
|---|---|---|
| ***Retirement** | You have earned enough credits to qualify for benefits. At your current earnings rate, if you continue working until... | |
| | your full retirement age (67 years), your payment would be about | $ 1,634 a month |
| | age 70, your payment would be about | $ 2,032 a month |
| | age 62, your payment would be about | $ 1,106 a month |
| ***Disability** | You have earned enough credits to qualify for benefits. If you became disabled right now your payment would be about | $ 1,590 a month |
| ***Family** | If you get retirement or disability benefits, your spouse and children also may qualify for benefits. | |
| ***Survivors** | You have earned enough credits for your family to receive survivors benefits. If you die this year, certain members of your family may qualify for the following benefits: | |
| | Your child | $ 1,248 a month |
| | Your spouse who is caring for your child | $ 1,248 a month |
| | Your spouse, if benefits start at full retirement age | $ 1,664 a month |
| | Total family benefits cannot be more than | $ 2,975 a month |
| | Your spouse or minor child may be eligible for a special one-time death benefit of $255. | |
| **Medicare** | You have enough credits to qualify for Medicare at age 65. Even if you do not retire at age 65, be sure to contact Social Security three months before your 65th birthday to enroll in Medicare. | |

* **Your estimated benefits are based on current law. Congress has made changes to the law in the past and can do so at any time. The law governing benefit amounts may change because, by 2035, the payroll taxes collected will be enough to pay only about 79 percent of scheduled benefits.**

**We based your benefit estimates on these facts:**

| | |
|---|---|
| Your date of birth (please verify your name on page 1 and this date of birth) | [redacted] |
| Your estimated taxable earnings per year after 2021 | [redacted] |
| Your Social Security number (only the last four digits are shown to help prevent identity theft) | XXX-XX-[redacted] |

Social Security Administration

# Retirement, Survivors and Disability Insurance

Important Information

Exhibit D

SOCIAL SECURITY
SUITE 100
790 FLETCHER DR
ELGIN, IL 60123-4736
Date: February 03, 2025
[redacted]

GRACIELA DE LA TORRE
[redacted]

Dear GRACIELA DE LA TORRE

On August 9, 2022, we sent you a letter about our decision on your claim for Social Security disability benefits. We told you that if you did not agree with the decision, you could request an appeal within 60 days from the date you received that letter. Our records show that you did not request an appeal until December 23, 2024.

We can extend the time limit to file an appeal only if you had a good reason for missing the deadline. However, based on the facts that you gave us, we are unable to extend the time limit in your case. Therefore, we cannot review your claim for benefits.

**Suspect Social Security Fraud?**

If you suspect Social Security Fraud, please visit https://oig.ssa.gov/report or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

**Need more help?**

1. Visit www.ssa.gov for fast, simple, and secure online service.

2. Call us at 1-800-772-1213, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY 1-800-325-0778. Please mention this letter when you call.

3. You may also call your local office at 877-405-0435.

SOCIAL SECURITY
SUITE 100
790 FLETCHER DR
ELGIN, IL 60123-4736

How are we doing? Go to www.ssa.gov/feedback to tell us.

*Social Security Administration*

Gmail

Exhibit E

Gracie Dlt <gmestiza1@gmail.com>

**Re: FW: *incapacitated* form* Graciela DeLa Torre v. Nippon Express USA**
1 message

**Gracie Dlt** <gmestiza1@gmail.com> Mon, Dec 11, 2023 at 12:28 PM
To: Kevin Probst <kprobst@longtermdisability.net>

That was the workman's comp attorney.

On Mon, Dec 11, 2023, 7:41 AM Kevin Probst <kprobst@longtermdisability.net> wrote:

> Thank you, Graciela.
>
> Out of curiosity, did Social Security ask your doctor to complete this form?
>
> Regards,
>
> Kevin
>
> **Kevin Probst, J.D.**
>
> Disability Insurance & ERISA Attorney
>
> *Office* longtermdisability.net
>
> 305.754.2000
>
> *Fax*
>
> 305.754.2007
>
> 1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134
>
> ---
>
> **From:** Gracie Dlt <gmestiza1@gmail.com>
> **Sent:** Friday, December 8, 2023 9:23 PM
> **To:** Gracie Dlt <gmestiza1@gmail.com>
> **Subject:** *incapable form* Graciela DeLa Torre v. Nippon Express USA
>
> Please see the incapacitated form electronically signed by my doctor.

Gmail

Exhibit F

Gracie Dlt <gmestiza1@gmail.com>

## URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

1 message

**Kevin Probst** <kprobst@longtermdisability.net> Thu, Dec 21, 2023 at 2:31 PM
To: Gracie Dlt <gmestiza1@gmail.com>
Cc: Paralegal <Paralegal@longtermdisability.net>

Good afternoon, Gracie:

Since Nippon's attorney and I needed to make a few minor edits to the release, please sign and (**only**) return page 7 of the attached updated version.

Kindly confirm receipt of this email and let us know if you have any questions.

Regards,

Kevin



**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*

305.754.2000

*Fax*

305.754.2007

longtermdisability.net

DABDOUB LAW FIRM
*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**From:** Kevin Probst
**Sent:** Tuesday, December 19, 2023 11:42 AM
**To:** Gracie Dlt <gmestiza1@gmail.com>
**Cc:** Paralegal <Paralegal@longtermdisability.net>
**Subject:** Settlement Release: Dela Torre v. Nippon Life

# Exhibit G

Hi, Graciela:

Please review the attached settlement agreement & release. You only need to send back page 7 after completing as follows:

BY: (Sign your name here)

ITS: (Write "Plaintiff")

DATE: (self-explanatory)

Let us know if you have any questions before signing.

Regards,

Kevin



**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*

305.754.2000

*Fax*

305.754.2007

longtermdisability.net

DABDOUB LAW FIRM

*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

Gmail

Exhibit H

Gracie Dlt <gmestiza1@gmail.com>

# Re: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

1 message

**Kevin Probst** <kprobst@longtermdisability.net> Fri, Dec 29, 2023 at 2:11 PM
To: Gracie Dlt <gmestiza1@gmail.com>, Paralegal <Paralegal@longtermdisability.net>

Hi, Gracie:

It's fine to sign it and use the "scan documents" option in Notes to save/send it back as a pdf.

Happy Holidays,
Kevin

**Kevin E. Probst, J.D.**
**Disability Insurance & ERISA Attorney**

**Dabdoub Law Firm**
**Toll Free: 888.812.0393**
**LongTermDisability.net**

---

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Friday, December 29, 2023 3:03:29 PM
**To:** Paralegal <Paralegal@longtermdisability.net>
**Cc:** Kevin Probst <kprobst@longtermdisability.net>
**Subject:** Re: FW: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

Can I digitally sign for it? I do apologize for the delay, I don't have a scanner handy.

*Graciela*
***Direct # 630.670.5914***

***Do not print this email unless is necessary***

On Fri, Dec 29, 2023 at 1:49 PM Paralegal <Paralegal@longtermdisability.net> wrote:

> Ms. Dela Torre,
>
> I just left you a voicemail. Please see the attached Release. It is urgent that you sign and return the signature page (page 7) - or let us know asap if you have any questions.
>
> Thank you,
>
> **Oriana Ordaz**
> **Paralegal**
>
> *Office*
> 305.754.2000
> *Fax*
> 305.754.2007
>
> longtermdisability.net

Gmail

Exhibit I . 1

Gracie Dlt <gmestiza1@gmail.com>

## Re: Social Security Attorney

1 message

**Gracie Dlt** <gmestiza1@gmail.com> Fri, May 12, 2023 at 1:18 PM
To: Kevin Probst <kprobst@longtermdisability.net>

Thanks! I almost pooped my pants. :)

*Graciela*
***Direct # 630.670.5914***

***Do not print this email unless is necessary***

On Fri, May 12, 2023 at 1:16 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

> Graciela:
>
> Look out for a different referral to Daley Disability Law. Remember though, you're under no obligation to hire them. Checking with friends, neighbors, or google are always good ways to explore other options as well.
>
> Regards,
>
> Kevin
>
> **Kevin E. Probst, J.D.**
>
> **Disability Insurance & ERISA Attorney**
>
> **Dabdoub Law Firm**
>
> **Toll Free: 888.812.0393**
>
> **LongTermDisability.net**
>
> ---
>
> **From:** Kevin Probst
> **Sent:** Friday, May 12, 2023 1:56 PM
> **To:** Gracie Dlt <gmestiza1@gmail.com>
> **Cc:** Geneses Strongarone <geneses@longtermdisability.net>
> **Subject:** RE: Social Security Attorney
>
> No worries y no problema. They're not doing any actual work in your case. Per a court requirement, they're only needed in case something has to be filed or taken care of locally.
>
> **Kevin E. Probst, J.D.**
>
> **Disability Insurance & ERISA Attorney**
>
> **Dabdoub Law Firm**
>
> **Toll Free: 888.812.0393**
>
> **LongTermDisability.net**

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Friday, May 12, 2023 1:40 PM
**To:** Kevin Probst <kprobst@longtermdisability.net>
**Subject:** Re: Social Security Attorney

Ay Dios Mio!

*Graciela*
***Direct # 630.670.5914***

***Do not print this email unless is necessary***

On Fri, May 12, 2023 at 12:35 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

> And he's also our local co-counsel in your LTD case against Nippon. Small world.
>
> **Kevin E. Probst, J.D.**
>
> **Disability Insurance & ERISA Attorney**
>
> **Dabdoub Law Firm**
>
> **Toll Free: 888.812.0393**
>
> **LongTermDisability.net**
>
> ---
>
> **From:** Kevin Probst
> **Sent:** Friday, May 12, 2023 1:35 PM
> **To:** Gracie Dlt <gmestiza1@gmail.com>
> **Cc:** Geneses Strongarone <geneses@longtermdisability.net>
> **Subject:** RE: Social Security Attorney
>
> I believe this name should sound familiar. He's also assisting you with your worker's comp claim, yes?
>
> **Kevin E. Probst, J.D.**
>
> **Disability Insurance & ERISA Attorney**
>
> **Dabdoub Law Firm**
>
> **Toll Free: 888.812.0393**
>
> **LongTermDisability.net**
>
> ---
>
> **From:** Justine Rojas <Justine@longtermdisability.net>
> **Sent:** Friday, May 12, 2023 11:14 AM
> **To:** Gracie Dlt <gmestiza1@gmail.com>
> **Cc:** Quashone Perry <quay@longtermdisability.net>; Kevin Probst <kprobst@longtermdisability.net>; Geneses Strongarone <geneses@longtermdisability.net>
> **Subject:** Social Security Attorney
>
> Hello Graciela,
>
> I hope this email finds you well. Please reach out to Howard Ankin he may be me able to assist you with your social security claim.

Gmail

Exhibit I . 2

Gracie Dlt <gmestiza1@gmail.com>

## Re: Social Security Attorney

1 message

**Gracie Dlt** <gmestiza1@gmail.com> Fri, May 12, 2023 at 12:39 PM
To: Kevin Probst <kprobst@longtermdisability.net>

Oh no, no, (Ankin Law) are horrible, I initially used their service but I was treated in a very racist way, so I'm no longer using their services.

*Graciela*
***Direct # 630.670.5914***

***Do not print this email unless is necessary***

On Fri, May 12, 2023 at 12:35 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

> And he's also our local co-counsel in your LTD case against Nippon. Small world.
>
> **Kevin E. Probst, J.D.**
>
> **Disability Insurance & ERISA Attorney**
>
> **Dabdoub Law Firm**
>
> **Toll Free: 888.812.0393**
>
> **LongTermDisability.net**
>
> ---
>
> **From:** Kevin Probst
> **Sent:** Friday, May 12, 2023 1:35 PM
> **To:** Gracie Dlt <gmestiza1@gmail.com>
> **Cc:** Geneses Strongarone <geneses@longtermdisability.net>
> **Subject:** RE: Social Security Attorney
>
> I believe this name should sound familiar. He's also assisting you with your worker's comp claim, yes?
>
> **Kevin E. Probst, J.D.**

# DABDOUB LAW FIRM
DISABILITY INSURANCE & ERISA ATTORNEYS

Settlement Statement
Graciela Dela Torre v. Nippon Life Insurance

Exhibit J

| | | | |
|---|---|---|---|
| Total Amount of Settlement | | $ | 90,000.00 |
| Attorney's Fee: | 40% of the gross | $ | 36,000.00 |
| | | $ | - |
| Amount to the Dabdoub Law Firm | | $ | 27,000.00 |
| Ankin Law Office LLC i | 25% | $ | 9,000.00 |

Costs

| | | |
|---|---|---|
| NDIL Filing Fee | $ | 402.00 |
| Service of process | $ | 120.51 |
| Service of process - 2nd attempt | $ | 120.51 |
| Deposition transcripts | $ | 509.55 |
| Johnson Vocational Consulting | $ | 1,200.00 |
| Subpoenas for depos - Firefly | $ | 685.53 |
| Clt depo - airline tickets | $ | 433.81 |
| Clt depo - car rental | $ | 212.77 |
| Clt depo - gas expense | $ | 15.86 |
| Clt depo - hotel | $ | 350.99 |
| Clt depo - meal expense | $ | 19.85 |
| Clt depo - airport parking | $ | 75.00 |
| Florida? SDFL Filing Fee | $ | 402.00 |
| Service of process | $ | 15.55 |
| 0 | $ | - |
| 0 | $ | - |
| 0 | $ | - |
| 0 | $ | - |
| Total Costs | $ | 4,563.93 |
| Attorney's Fee Collected | $ | 36,000.00 |
| Net to Client | $ | 49,436.07 |

Acknowledgement and Receipt

Graciela Dela Torre , acknowledge my voluntary agreement to settle this caase with my full knowledge for the amounts shown and I agree to the itemized costs, expenses and disbursements. I am satisfied with the legal service rendered. I understand that I am responsible for all outstanding bills, not the Dabdoub Law Firm.

DocuSigned by: Graciela Dela Torre
FC46ED3A0FDB40E...
By: Client Graciela Dela Torre — Date 1/23/2024

DocuSigned by: [signature]
4F0F0C9EDA49400...
By: Edward P Dabdoub, Esq. — Date 1/23/2024

Local Counsel?
DocuSigned by: Howard Y. Ankin
0CEFBB61287B4EE...
Ankin Law Office LLC i — Date 1/23/2024

Gmail

Exhibit K

Gracie Dlt <gmestiza1@gmail.com>

## Dela Torre v Nippon - Co-counsel Agreement

1 message

**Geneses Strongarone** <geneses@longtermdisability.net> Tue, Jan 23, 2024 at 12:15 PM
To: Gracie Dlt <gmestiza1@gmail.com>
Cc: Kevin Probst <kprobst@longtermdisability.net>, Maria Calvo <maria@longtermdisability.net>

Dear Ms. Dela Torre,

In preparation for settlement funds, we will need the attached signed and returned to our office. This is the Agreement previously discussed with you regarding Ankin Law as co-counsel in your case. If you have any questions, please do not hesitate to contact us.

Thank you,

**Geneses Strongarone**

Litigation Paralegal

*Office*

305.754.2000

*Fax*

305.754.2007

longtermdisability.net

DABDOUB LAW FIRM

*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**Executed - Co-Counsel Agreement.pdf**
198K

Gmail

Exhibit L.1

Gracie Dlt <gmestiza1@gmail.com>

## Re: Graciela Dela Torre, MRI results right wrist

1 message

**Gracie Dlt** <gmestiza1@gmail.com> Fri, Nov 3, 2023 at 2:42 PM
To: Geneses Strongarone <geneses@longtermdisability.net>, Kevin Probst <kprobst@longtermdisability.net>

Following up with our phone conversation, please see the medical records and appointment info.

*Graciela*
***Direct # 630.670.5914***

***Do not print this email unless is necessary***

On Tue, Jul 11, 2023 at 2:58 AM Gracie Dlt <gmestiza1@gmail.com> wrote:

> Thank you,
> Graciela Dela Torre
> 653 Wing St, Elgin, IL 60123
> (630) 670-5914

**9 attachments**




**Oct 05 RS to Jan 2024.jpg**
17K

**August 10, 2023 Progress notes.pdf**
162K

**Dr. Notes 8.21.2023.pdf**
477K

**Dr. Notes 10.30.2023.pdf**
289K

**MRI APPOINTMENT Nov 26 2024.pdf**
25K

**Oct 12 RS to Jan 2024.pdf**
21K

**Hennessy 01.16.2024.pdf**
34K

**Karen 11.10.2023.pdf**
30K

**Dr. Notes 11.3.2023.pdf**
313K

EXHIBIT L

5.7 Time is of the essence with respect to this Agreement.

5.8 This Agreement shall be construed and interpreted in accordance with Illinois law.

IN WITNESS HEREOF, the undersigned have executed this Agreement as of the dates indicated below:

GRACIELA DELA TORRE

BY: Graciela Dela Torre
ITS: Plantiff
DATE: 12/29/2023

NIPPON LIFE INSURANCE COMPANY OF AMERICA

BY: David Axelrod
ITS: Chief Strategy & Operations Officer
DATE: January 2, 2024

**DABDOUB LAW FIRM, P.A.**

By: ______________________________ 01/02/2024
Kevin Probst                                                    Date
Attorney for
Graciela Dela Torre

**NIPPON LIFE INSURANCE COMPANY OF America**

By: ______________________________ January 2, 2024
Justin Wax Jacobs                                              Date
Attorney for
Nippon Life Insurance Company of America

Gmail

# Exhibit M

Gracie Dlt <gmestiza1@gmail.com>

***Case 1:22-cv-07059* Re: FW: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life**
1 message

**Gracie Dlt** <gmestiza1@gmail.com> Tue, Jan 28, 2025 at 8:07 PM
To: Kevin Probst <kprobst@longtermdisability.net>, Maria Calvo <maria@longtermdisability.net>, Paralegal <paralegal@longtermdisability.net>, Geneses Strongarone <geneses@longtermdisability.net>
Cc: Christina Presslak <Christina_Presslak@ilnd.uscourts.gov>

Dear Kevin and Team,

I hope this email finds you well. I am writing to formally request that you withdraw as my attorney from my case effective immediately. Please take the necessary steps to file a withdrawal with the court and provide me with confirmation once it has been completed.

*Graciela*
***Direct # 630.670.5914***

***Do not print this email unless is necessary***

On Fri, Jan 17, 2025 at 12:43 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

> Ms. Dela Torre:
>
> Under Rule 60(b)(2) and 59(b), for there to be valid grounds for a judge to reopen a closed case, there must be newly discovered evidence that, with reasonable diligence, could not have been discovered within 28 days of the entry of judgment (or other court order/notice closing the case). More importantly, I can assure that Nippon had ample medical records regarding your 2022 surgery and 2021 physical therapy treatment.
>
> Under Rule 60(c), a motion under this Rule must be made no more than a year after the entry of the judgment or order closing the case.
>
> As reflected by the attached Notification, the judge closed your case on January 24, 2024.
>
> Therefore, your deadline to file a motion under Rule 60(b) is January 24, 2025.
>
> Although it is our belief that the judge in your case is highly unlikely to grant a motion under Rule 60(b), I encourage you to seek a second opinion from another attorney.
>
> We stand by the work we performed in your case and the successful settlement we helped you obtain.
>
> Though I wish you the best, please be advised that we will not be providing you with any further advice or representation.
>
> Regards,
>
> 
>
> **Kevin Probst, J.D.**
>
> Disability Insurance & ERISA Attorney
>
> *Office* longtermdisability.net
>
> 305.754.2000
>
> *Fax*

305.754.2007

DABDOUB LAW FIRM
*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

---

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Thursday, January 16, 2025 12:07 PM
**To:** Kevin Probst <kprobst@longtermdisability.net>
**Subject:** Re: FW: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

**Subject:** Request to Vacate Settlement Using Rule 60(b) – New Evidence of Ongoing Treatment

Dear Kevin,

I hope this message finds you well. I’m writing to discuss the possibility of vacating my settlement related to the Long-Term Disability Insurance case based on newly discovered evidence.

Upon reviewing my medical records, I found that I accidentally omitted key documents regarding my ongoing physical therapy treatment that I was receiving in January throug December 2021, as well as surgery that took place in 2022. These documents show that I was still under medical care during the period when my benefits were terminated in November 2021.

I would like to explore the option of using Rule 60(b) to seek relief from the settlement.

To summarize:

- I inadvertently omitted records showing that I was receiving ongoing occupational therapy and treatment throughout January 2021 through December 2021
- I also had surgery in 2022 that further supports the ongoing nature of my condition and treatment.
- Given that the benefits were terminated in November 2021, and the new evidence demonstrates my continued medical care, I believe there may be grounds to argue that my benefits were wrongly terminated.

I would like to proceed with discussing how we can use this new evidence to potentially vacate the settlement under Rule 60(b), which permits relief from a judgment due to new evidence or errors that have come to light after the fact. Please let me know how we can move forward and if there is any additional information you need from me.

Thank you for your continued support and guidance in this matter. I look forward to hearing your thoughts.

Sincerely,

*Graciela*
***Direct # 630.670.5914***

***Do not print this email unless is necessary***

On Tue, Jan 7, 2025 at 3:19 PM Kevin Probst <kprobst@longtermdisability.net> wrote:



**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*

longtermdisability.net

305.754.2000

*Fax*

305.754.2007

DABDOUB LAW FIRM

*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

---

**From:** Kevin Probst
**Sent:** Tuesday, January 7, 2025 3:05 PM
**To:** 'Gracie Dlt' <gmestiza1@gmail.com>
**Subject:** RE: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

Good afternoon, Graciela:

After all the time, effort and resources that I and the firm dedicated to your case, reading your email was quite the shock. As you may recall, there was a strong possibility that  - even if we had taken your case to judgment and won, you would have walked away with $0 because of the potential offsets/overpayment resulting from the money you were expecting to receive from Workers Comp and/or Social Security. Despite this fact, I was successful in getting Nippon to agree to pay $90,000 to resolve your case – and this was after you had already advised me that you'd willing to accept an offer of $80,000.

With disability cases such as yours, the only issue is whether the claim administrator made the correct decision at the time benefits were denied. In your case, that date was November 18, 2021. Your doctor's letter, on the other hand, was signed on December 7, 2023 – two years after Nippon terminated your benefits. Not surprisingly, Nippon was not interested in documents from 2 years after their decision was made.

As stated in the executed Settlement Agreement and Mutual Specific Release (attached) – and as is the case whenever parties sign a settlement agreement, they are releasing each other from any further causes of action related to the dispute and the court case is dismissed with prejudice (meaning it cannot be reopened).

It is my sincere hope that upon further reflection and consideration of the above explanation and facts, you come to understand again that we helped you obtain a **very** generous settlement offer.

I wish you a happy and healthy new year.



**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office* longtermdisability.net

305.754.2000

*Fax*

305.754.2007

DABDOUB LAW FIRM

*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Friday, January 3, 2025 5:00 PM
**To:** Kevin Probst <kprobst@longtermdisability.net>
**Cc:** Retire Paralegal <Paralegal@longtermdisability.net>
**Subject:** Re: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

**Graciela Dela Torre**
653 Wing St, Elgin IL 60123
January 3, 2025

**Kevin Probst**

Dabboub Law Firm
1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**Subject:** Request for Review of LTD Settlement and Potential Reopening

Dear Kevin,

I hope this message finds you well. I am writing to request your assistance in reviewing the settlement agreement for my Long-Term Disability (LTD) claim, as I have concerns about potential errors or omissions that may have impacted the outcome.

Specifically, I provided you with a letter from my doctor stating my incapacity to work, which I believe was a critical piece of evidence. However, I suspect that this letter may not have been included or considered during the settlement process. If this is the case, it would constitute a significant omission, potentially affecting the terms and fairness of the agreement.

To clarify and address this matter, I kindly ask you to:

1. **Review the Settlement Agreement**: Verify whether the doctor's letter and other pertinent medical evidence were included and appropriately considered.
2. **Provide Documentation**: Share any records or communications regarding the inclusion of the letter in the settlement process.
3. **Evaluate Options for Reopening the Claim**: If the letter was excluded, I would like to explore options to challenge or reopen the settlement based on error or omission.

I am also open to any additional recommendations you may have to address this issue. Please let me know if further documentation or clarification from my side is required.

Thank you for your attention to this matter. I look forward to your response and guidance. Please feel free to contact me at 653 Wing St, Elgin IL 60123

Sincerely,
Graciela Dela Torre

(630) 670-5914

***Do not print this email unless is necessary***

On Thu, Dec 21, 2023 at 6:00 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

> Hi, Graciela:
>
> The attached word doc reflects the tracked changes.
>
> If you have any questions and prefer to speak by phone, let me know a few good times that work for you tomorrow.
>
> Otherwise, as soon as you return your signature page, I'll sign as well and relay to Nippon's attorney which will start the 30 day clock for them to issue your check.
>
> Regards,
>
> Kevin



**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*

305.754.2000

*Fax*

305.754.2007

longtermdisability.net

DABDOUB LAW FIRM

*Disability Insurance & ERISA Attorneys*

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

---

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Thursday, December 21, 2023 6:45 PM
**To:** Kevin Probst <kprobst@longtermdisability.net>
**Subject:** Re: URGENT: Updated Settlement Release - Dela Torre v. Nippon Life

Email received, what are those changes?

On Thu, Dec 21, 2023, 2:32 PM Kevin Probst <kprobst@longtermdisability.net> wrote:

> Good afternoon, Gracie:
>
> Since Nippon's attorney and I needed to make a few minor edits to the release, please sign and (**only**) return page 7 of the attached updated version.
>
> Kindly confirm receipt of this email and let us know if you have any questions.
>
> Regards,
>
> Kevin
>
> **Kevin Probst, J.D.**
>
> Disability Insurance & ERISA Attorney
>
> *Office*
>
> 305.754.2000
>
> *Fax*
>
> 305.754.2007
>
> longtermdisability.net
>
> 1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134

**From:** Kevin Probst
**Sent:** Tuesday, December 19, 2023 11:42 AM
**To:** Gracie Dlt <gmestiza1@gmail.com>
**Cc:** Paralegal <Paralegal@longtermdisability.net>
**Subject:** Settlement Release: Dela Torre v. Nippon Life

Hi, Graciela:

Please review the attached settlement agreement & release. You only need to send back page 7 after completing as follows:

BY: (Sign your name here)

ITS: (Write “Plaintiff”)

DATE: (self-explanatory)

Let us know if you have any questions before signing.

Regards,

Kevin

**Kevin Probst, J.D.**

Disability Insurance & ERISA Attorney

*Office*

305.754.2000

longtermdisability.net

*Fax*

305.754.2007

1600 Ponce de Leon Blvd. ste. 1202 • Coral Gables, FL 33134